**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Case No. 24-CR-151 (ECT/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| | **and** |
| Paul Antonio Early, | **REPORT & RECOMMENDATION** |
| Defendant. | |

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for a report and recommendation on three dispositive pretrial motions filed by Defendant Paul Antonio Early: a Motion to Suppress Evidence Obtained as a Result of a Search and Seizure, (Dkt. No. 25), a Motion to Suppress Statements (Dkt. No. 26), and a Motion to Suppress Evidence Obtained as a Result of a Search Warrant (Dkt. No. 43), as well as a non-dispositive Motion for a *Franks* Hearing. (Dkt. No. 42.) Mr. Early is charged with Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

The Court held a motions hearing on March 6, 2025. Assistant United States Attorney Kristian Weir represented the United States, and Attorney Catherine Turner represented Mr. Early. Counsel for the United States submitted the search warrant and accompanying application (including the affidavit in support of that application) for a 2016 GMC Terrain, alleged to be owned by Mr. Early. (U.S. Ex. 1.) Counsel for Mr. Early submitted two exhibits of Body-Worn Camera ("BWC") footage from the Minneapolis

1

Police Department ("MPD"): one from Sergeant Adam Lepinski (Def. Ex. 1) and another from Officer Michael Selle. (Def. Ex. 2.) After the hearing, the parties filed post-hearing briefs. (Def.'s Mem. in Supp., Dkt. No. 55; U.S. Resp. in Opp'n, Dkt. No. 56.) Neither party called any witnesses to testify. The Court took the pending motions under advisement on April 17, 2025, the date of the most recent filing. For the following reasons, the Court recommends that the three dispositive motions be denied and orders that the Motion for a *Franks* Hearing be denied.

## BACKGROUND

The Minneapolis Police Department started the investigation that led to Mr. Early being charged in response to an alleged shooting south of downtown Minneapolis. The day after the January 31, 2024 shooting, police arrested Mr. Early after watching him engage in what they believed to be drug transactions. When the police searched Mr. Early's vehicle under the authority of a search warrant, they found a bag containing 12 grams of what is alleged to be cocaine, separated into 32 individually wrapped bags. (Def.'s Mot. to Suppress 2, Dkt. No. 25; Def.'s Mot. for Continuance 1, Dkt. No. 49.)

I.     **Factual Background**

On January 31, 2024, MPD officers responded to a 911 call reporting gunshots near 19th Street and Nicollet Avenue. (U.S. Resp. in Opp'n 2, Dkt. No. 56.) Sergeant Adam Lepinski reviewed video footage of the shooting, which showed the driver of a "dark colored GMC Terrain SUV" get out of the vehicle, shoot at another person, and drive off. (U.S. Ex. 1 at 2.) The driver was wearing a black sweatsuit with white stripes down the sleeves and pant legs. (*Id.*) Earlier that day, there had been a 911 call about drug sales at

the Chicago Crossings strip mall, which is at Franklin Avenue and Chicago Avenue, near the site of the alleged shooting. The caller said the drug sales involved a red GMC Terrain with the MN license plate LKG690 (*Id.*) Video footage from that day showed the driver was a man in a green camouflage jacket and a black sweatsuit with stripes down the sleeves and trouser legs, which "appear[ed] identical to the clothing the shooter [was] observed wearing." (*Id.* at 3.)

The next morning, a man wearing a camouflage jacket drove the GMC Terrain with the license plate LKG690 to the Chicago Crossings strip mall. (*Id.*) Sergeant Lepinski identified Mr. Early as the driver from Mr. Early's previous narcotics indictment, a matter with which Sergeant Lepinski had been involved. (*Id.*)  Sergeant Lepinski observed in person and over video what he believed to be multiple drug sales, given his training and experience. (*Id.*) Mr. Early quickly entered alleyways with other people and took money from a person in a car that pulled up beside him. Sergeant Lepinski also noted that Mr. Early appeared to match the January 31 shooter's height, weight, and build. (*Id.*) After watching for a while, Sergeant Lepinski stopped Mr. Early and placed him under arrest. (*Id.*) Upon searching Mr. Early's person, Sergeant Lepinski found money and keys to the GMC Terrain. (*Id.*) Because Sergeant Lepinski did not find drugs on Mr. Early, he suspected Mr. Early kept them in the nearby GMC Terrain, as was typical, in Sergeant Lepinski's experience, of drug sales. (*Id.* at 4.) The MPD towed and impounded Mr. Early's GMC Terrain after his arrest. (*Id.* at 5.) Sergeant Lepinski summarized these facts in a search warrant application for Mr. Early's GMC Terrain, and Hennepin County District

Judge Amber Brennan, upon finding probable cause to search the vehicle, signed the warrant. (*Id.* at 1–8.)

On February 2, Sergeant Lepinski and Officer Selle searched Mr. Early's GMC Terrain and found a bag of suspected crack cocaine, a phone, and assorted documents. (*Id.* at 9.) The cocaine seized in this search provides the basis for the charge against Mr. Early in his indictment. Later, Sergeant Lepinski and Officer Selle interviewed Mr. Early at the Hennepin County Jail. (Def.'s Mem. in Supp. 7, Dkt. No. 55.) There, the officers read Mr. Early his *Miranda* rights, and he indicated he understood them. (Def.'s Second Mot. to Suppress Statements 2, Dkt. No. 26.) Mr. Early also repeatedly said he was undergoing withdrawal from K2, a synthetic form of marijuana. (*Id.*) When asked about waiving his rights, Mr. Early grunted. (Def.'s Mem. in Supp. 7, Dkt. No. 55.) The officers then questioned Mr. Early, and he made statements to them. (*Id.* at 7–8.)

## II.   Legal Standards

### A. Probable Cause

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated…" U.S. Const. amend. IV. An arrest is a "seizure" as that word is used in the Fourth Amendment. *Torres v. Madrid*, 592 U.S. 306, 311 (2021). An officer may arrest someone without a warrant, as happened here when Sergeant Lepinski arrested Mr. Early, if the arrest is supported by probable cause, meaning "the facts and circumstances within the officers' knowledge … were sufficient to warrant a prudent person in believing that an

offense has been committed." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (quoting *United States v. Rivera*, 370 F.3d 730, 733 (8th Cir. 2004)).

Turning from Mr. Early's arrest to the searches in this case, an officer may, within limits, search someone without a warrant as part of a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). An officer may also, without a warrant, impound a car pursuant to police department policy and search "'any area of the vehicle in which evidence might be found' if probable cause exists." *See United States v. Webster*, 625 F.3d 439, 445 (8th Cir. 2010) (quoting *United States v. Grooms*, 602 F.3d 939, 942–43 (8th Cir. 2010)); *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (per curiam) (allowing officers to search impounded vehicle without warrant if probable cause exists).

An officer may also search a vehicle pursuant to a judicially issued search warrant. For a judge to find that there is probable cause to issue a search warrant, the circumstances must show that "there is a fair probability evidence of a crime will be found in a particular place." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). Officers may draw reasonable inferences to prepare warrant applications, and judges may also draw reasonable inferences from the totality of the circumstances to determine whether probable cause exists. *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). An officer's state of mind, however, "is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Whren v. United States*, 517 U.S. 806, 812–813 (1996); *Arkansas v. Sullivan*, 532 U.S. 769, 770 (2001)) (holding probable cause exists when circumstances, viewed objectively, would justify officer's actions).

### B. Statements Made in Response to Police Interrogation

The Fifth Amendment provides, among other rights, the right of a criminal defendant to refuse to testify against themself. U.S. Const. amend. V. To protect this right, the police must, before questioning a person who is in custody, warn the person that anything they say may be used against them. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Arrestees may waive that right after being adequately informed of it, so long as that waiver is voluntary, knowing, and intelligent. *Id*. A *Miranda* waiver and post-*Miranda* statements are voluntary if they are "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary.'"). Statements to police are voluntary if the defendant had "the mental capacity to waive [their] rights." *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998). While the United States has the ultimate burden of persuasion as to the admissibility of a statement made by a criminal defendant in custody, the "defendant has the initial burden of making a prima facie showing of illegality." *United States v. Starks*, 193 F.R.D. 624, 628 (D. Minn. 2000) (citing *United States v. de la Fuente,* 548 F.2d 528, 534 (5th Cir.), *cert. denied* (1977)).

When questioned, Mr. Early told police he was withdrawing from K2. Intoxication does not make a statement involuntary per se. Instead, the question is whether the defendant's "mental impairments caused the defendant's will to be overborne." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (quoting *United States v. Casal,* 915 F.2d 1225, 1229 (8th Cir. 1990)); *see Turner*, 157 F.3d at 555–56 (ruling waiver valid when

circumstances show defendant understood and knowingly waived rights, even if "intoxicated by PCP at the time of [their] confession"); *United States v. Annis*, 446 F.3d 852, 856 (8th Cir. 2006) (ruling statements voluntary even though the defendant was withdrawing from methamphetamine).

### C. Motion for a *Franks* Hearing.

Affidavits submitted to a court in support of an application for a search warrant are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, a defendant can overcome that presumption and obtain a hearing on the truthfulness of the statements made by the affiant if they make "a substantial preliminary showing" that the affiant deliberately or recklessly (a) made false statements in the affidavit, or (b) omitted information from the affidavit, and that with the false statements corrected or the missing information supplied, the affidavit no longer establishes probable cause. *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (quoting *Franks*, 438 U.S. 155–56 (1978)). Recklessness may be inferred from omissions in an affidavit when the material omitted "would have been clearly critical to a finding of probable cause." *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015) (quoting *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011)). The false statements or omissions must have been necessary to a finding of probable cause to issue the warrant. *United States v. Mayweather*, 993 F.3d 1035, 1043 (8th Cir. 2021) (quoting *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008)).

### D. Good Faith Execution of Search Warrant

Even if a Court finds that an issued warrant was not supported by probable cause, evidence found in a search conducted pursuant to that warrant need not be suppressed if

the warrant was executed in good faith. In *Leon v. United States*, the Supreme Court held

that the exclusionary rule does not apply when the police obtain evidence by acting in

"objectively reasonable reliance" on a search warrant. 468 U.S. 897, 922 (1984); *see*

*also Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *Leon*, 468 U.S. at 922).

The *Leon* good faith exception will not apply for the following four reasons, even though

law enforcement searched under the authority of a search warrant:

> (1) the supporting affidavit or testimony includes a false statement made
> knowingly and intentionally or with reckless disregard for the truth to
> mislead the issuing judge; (2) the issuing judge wholly abandoned his
> judicial role in issuing the warrant; (3) the affidavit in support of the warrant
> is so lacking in indicia of probable cause as to render official belief in its
> existence entirely unreasonable; or (4) the warrant is so facially deficient that
> no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (citing *United*

*States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007)). A court may find that the good faith

exception applies even where, as is the case here, the police personnel who executed the

warrant are the same individuals who applied for the warrant. *United States v. Mayweather*,

993 F.3d 1035, 1043 n.8 (8th Cir. 2021) ("Neither party notes that the affiant was the same

officer as the one who executed the search warrant. Regardless, we do not vary our analysis

when the officer who applies for a search warrant also executes the warrant.") (citing

*United States v. Carpenter*, 341 F.3d 666, 669–670 (8th Cir. 2003); *United States v. Falso*,

544 F.3d 110, 113–14 (2d Cir. 2008)).

## **DISCUSSION**

Mr. Early has four motions before the Court. First, he argues that all evidence

obtained from searching him and the GMC Terrain should be suppressed because the

officers did not have probable cause to justify his warrantless arrest and the subsequent seizure and search of the vehicle. (Def.'s First Mot. to Suppress Evidence 2, Dkt. No. 25.) Second, he argues his statements to the officers on February 2, 2024, should be suppressed because his *Miranda* waiver and post-*Miranda* statements were involuntary on account of him experiencing withdrawal from K2 at the time of the interview. (Def.'s Second Mot. to Suppress Statements 1–2, Dkt. No. 26.) Third, he argues he is entitled to a *Franks* hearing because the warrant application made assumptions and omitted crucial information that would have weighed against a finding of probable cause. (Def.'s Mot. for *Franks* Hr'g. 3, Dkt. No. 42.) Fourth, he argues all evidence obtained from searching the GMC Terrain should be suppressed because the search warrant application omitted important information or included misleading information, so it was not supported by probable cause. (Def.'s Mot. to Suppress Ev. 1, Dkt. No. 43.) The Court will address these in turn.

## I.   Motion to Suppress Evidence Obtained as a Result of a Search and Seizure

Mr. Early argues the officers did not have probable cause to support his arrest and the subsequent seizure and search of his GMC Terrain. (Def.'s First Mot. to Suppress Evidence 1–2, Dkt. No. 25.) Probable cause to arrest exists where "the facts and circumstances within the officers' knowledge . . . were sufficient to warrant a prudent person in believing that an offense has been committed." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (quoting *United States v. Rivera*, 370 F.3d 730, 733 (8th Cir. 2004)). Probable cause to search exists when there is a "fair probability" that contraband or evidence of a crime will be found in the place to be searched. *United States v. Solomon*,

432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Murphy*, 69 F.3d 237, 240 (8th Cir.1995)).

Here, the officers had probable cause to arrest Mr. Early without a warrant. From Sergeant Lepinski's personal observation and training, he believed Mr. Early was selling drugs because he was "disappearing into alleyways quickly with presumed customers, and in one case taking money from an individual in a car that pulled up to him." (U.S. Ex. 1 at 3.) Even though Sergeant Lepinski did not find any drugs or large quantities of cash on Mr. Early's person, the circumstances were sufficient to find probable cause to arrest Mr. Early. Because of Sergeant Lepinski's experience seeing people using nearby locked vehicles for storing drugs while selling them, Sergeant Lepinski suspected Mr. Early's GMC Terrain, which was locked and nearby, contained drugs. (U.S. Ex. 1 at 3–4.) Given what the officers had observed that day, there was probable cause to arrest Mr. Early for selling illegal drugs and seize his GMC Terrain, pending the issuance of a search warrant. Mr. Early's arrest and the seizure of his vehicle were supported by probable cause, so this Court recommends the motion be denied.

## II.    Motion to Suppress Statements

Mr. Early argues that his *Miranda* waiver and subsequent post-*Miranda* statements on February 2, 2024, were involuntary and should be suppressed because he was suffering from withdrawal after using K2, a synthetic cannabinoid product. (Def.'s Memo. in Supp. 7, Dkt. No. 55.) A defendant's *Miranda* rights may be waived, making post-warning statements admissible, if the statements do not result from police intimidation or coercion. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). A waiver is voluntary if the defendant

10

had "the mental capacity to waive [their] rights." *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998). Intoxication does not make a statement involuntary per se. Rather, the question is whether the defendant's "mental impairments caused the defendant's will to be overborne." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (quoting *United States v. Casal,* 915 F.2d 1225, 1229 (8th Cir. 1990)); *see also Turner*, 157 F.3d at 555–56 (ruling waiver valid when defendant understood and knowingly waived rights, even if "intoxicated by PCP at the time of [their] confession"); *United States v. Annis*, 446 F.3d 852, 856 (8th Cir. 2006) (finding statements to be voluntary during withdrawal from methamphetamine).

Involuntariness is a high bar, and it is one Mr. Early has not cleared. The record does not show that Mr. Early's will was overborne by his withdrawal symptoms. Sergeant Lepinski's BWC footage shows Mr. Early actively conversing with the police as he attempts to bargain with them for his release. (Def.'s Exs. 1–2.) Mr. Early has also provided the Court with no evidence that police exhibited any coercive or otherwise illegal behavior to overcome his will to remain silent, as required by *Connelly*, 479 U.S. 167 (1986), so he has not carried his preliminary burden to establish a prima facie case of illegality under *Starks*, 193 F.R.D. 628. Mr. Early's grunt in response to a question asking whether he waived his rights, coupled with the fact that he continued to talk to the officers, is not sufficient to show any coercive police action or that the waiver or statements were involuntary.

III.   **Motion for *Franks* Hearing and to Suppress Evidence Obtained as a Result of a Search Warrant**

These two defense motions are nearly word-for-word identical but seek different relief. Because the Motion for a *Franks* Hearing, if granted, could result in the generation of additional evidence bearing on the Motion to Suppress, and could affect the existence of *Leon* good faith in executing the search warrant, the Court will consider the Motion for a *Franks* Hearing first, then the Motion to Suppress.

### A. Motion for a *Franks* Hearing

A motion for a *Franks* hearing is non-dispositive because a Franks hearing does not finally determine whether evidence will be suppressed, but only what procedure will be used to decide a motion to suppress. *United States v. Green*, No. 19-CR-103 (MJD/ECW), 2020 WL 6337705, at *2 (D. Minn. Oct. 29, 2020). "A *Franks* hearing is just a step along the way to the ultimate goal of a motion to suppress…" *Id.* at *2 (quoting *United States v. Lucca*, 377 F.3d 927, 932 (8th Cir. 2004)). The issue presented by a motion for a *Franks* hearing is whether a hearing will be held; if that hearing is held, the outcome will of course bear on a motion to suppress search and seizure evidence, but a motion for a *Franks* hearing does not, in and of itself, resolve a question of whether evidence will be suppressed.

In order to be entitled to a *Franks* hearing, the defendant must make a "substantial preliminary showing" that a law enforcement agent made false statements, or omitted facts from, a search warrant application; that the agent did so either "knowingly and intentionally" or with reckless disregard for the truth; and that the false statements or omissions are material. Materiality is assessed by re-reading the search warrant application

12

with either the false statements corrected or the missing information supplied. If the affidavit no longer establishes probable cause then the omissions or misstatements were material. *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013).

The requirement of a substantial preliminary showing "is not lightly met." *Id*. "There is … a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *United States v. Bradley*, 924 F.3d 476, 481 (8th Cir. 2019) (quoting *United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012)). A defendant must show deliberate or reckless falsity or omission; a showing of negligence or innocent mistake will not suffice. *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010). Evaluated under these standards, Mr. Early's Motion for a *Franks* Hearing fails.

In the motion itself, Mr. Early does not identify any alleged omissions or false statements in the affidavit. Rather, he argues that the police were not transparent with the issuing judge that their motives for seeking to arrest Mr. Early and search his vehicle were to solve the previous night's shooting, and less so to bring drug dealing activity to a halt. (Def.'s Mem. in Supp. 6, Dkt. No. 55.)

This criticism is misplaced. Sergeant Lepinski's affidavit actually begins with the shooting, not the drug sales. The affidavit first describes the events of the shooting, goes on to recite that police found three discarded cartridge casings at the scene of the shooting, that Sergeant Lepinski reviewed video footage of the shooting and saw the shooter get out

13

of a "dark colored GMC Terrain SUV," and finally noted that the shooting scene and the Chicago Crossings mall "are not that far apart" and that one street gang claims the area around the Chicago Crossings mall, while another claims the area near the shooting. (*See generally* U.S. Ex. 1.) Sergeant Lepinski avers that violent encounters between gangs near this territorial boundary are not uncommon.

Sergeant Lepinski then forthrightly lets the reviewing judge know that Mr. Early was arrested on narcotics charges in part so that the police could continue their investigation of the shooting: "Early['s] behavior was consistent with narcotics dealing and the vehicle he was driving matched the description of the shooting suspect vehicle. Early was stopped by officers and placed under arrest for PC narcotics *and so officers could investigate the vehicle to determine if it was the suspect vehicle from the shooting."* (U.S. Ex. 1 at 3 (emphasis added).)

In his later-filed memorandum in support of his motions, Mr. Early advances the alternate argument that he believes the warrant application had two material defects: (1) the affidavit said the vehicle involved in the January 31, 2024, shooting was a GMC Terrain, but neither that fact nor the vehicle's license plate had been confirmed at the time the warrant application was written; and (2) the affidavit said Mr. Early was selling drugs before he was arrested, but it omits that the police did not find any controlled substances or large amounts of money when they searched him. (Def.'s Mem. in Supp. 4–5, Dkt. No. 55; Def.'s Mot. for *Franks* Hearing 1–3, Dkt. No. 42.)

These arguments mis-state the contents of the warrant affidavit, the evidence, or both. As to the first claim, that the police overstated their knowledge of the vehicle involved

14

in the shooting, all that Sergeant Lepinski wrote in his affidavit is that the shooter got out of a "dark colored GMC Terrain SUV." (U.S. Ex. 1 at 2.) He did not claim to know the vehicle's license plate number, and likely, the license plates could not be seen in the video footage. Nor, contrary to Mr. Early's claim, does Officer Selle say on his body-worn camera that the make and model of the vehicle is unknown. All Officer Selle says is that the license plate number is unknown. (Def.'s Ex. 2.) As to the second argument, Sergeant Lepinski's affidavit says flatly that when Mr. Early was arrested "[n]o firearm or narcotics were found on his person." (U.S. Ex. 1 at 3.) This statement, lifted verbatim from the affidavit, is precisely the statement that Mr. Early claims was *not* made. Accordingly, the Court denies Mr. Early's Motion for a *Franks* Hearing.

## B. The Motion to Suppress Evidence

Because the Court has denied the Motion for a *Franks* Hearing, there will be no additional evidence for the Court to consider when evaluating the Motion to Suppress, so the Court now proceeds to that motion. As noted above, the text of the Motion to Suppress is almost identical to the Motion for a *Franks* Hearing and alleges the same shortcomings in Sergeant Lepinski's affidavit. Put in terms of a Motion to Suppress, Mr. Early claims that the warrant allowing the search of his GMC Terrain was not supported by probable cause because the warrant application submitted to Judge Brennan was "carefully craft[ed] … to convince the signing judge that officers caught [Mr. Early] on camera selling drugs, but in reality Officers never had strong evidence of that and instead had targeted [Mr. Early] before his arrest as someone who 'almost killed a cop.'" (Def.'s Mot. to Suppress Ev. 3, Dkt. No. 43.) The Motion to Suppress and later-filed supporting memorandum allege the

15

same lack of transparency and shortcomings in the affidavit that were claimed in the Motion for a *Franks* Hearing.

For the same reasons the Court adduced in denying the Motion for a *Franks* Hearing, the Court finds inadequate the allegations of false statements and missing information that undergird the Motion to Suppress.

### i. Facts Supporting the Search Warrant Application

In addition to the reasons the Court set forth in denying the Motion for a *Franks* Hearing, the Court notes that probable cause does not require Sergeant Lepinski to prove Mr. Early was engaged in drug sales before searching him. Officers must simply show "there is a fair probability evidence of a crime will be found in a particular place," given the totality of the circumstances. *Faulkner*, 826 F.3d at 1144. The warrant says Mr. Early appeared to be engaged in drug sales by "disappearing into alleyways quickly with presumed customers, and in one case taking money from an individual in a car that pulled up to him." (U.S. Ex. 1 at 3.) Given this, Sergeant Lepinski arrested and searched Mr. Early for drugs but found none. (*Id.*) Having experienced people selling drugs often keeping a supply in a nearby locked vehicle, Sergeant Lepinski believed Mr. Early's nearby locked GMC Terrain contained drugs. (*Id.* at 3–4.) This belief, included in the application for a search warrant, established probable cause to search the GMC Terrain.

### ii. Evidence obtained through the post-arrest search warrant need not be suppressed because of the Leon good-faith exception.

Investigators waited to search the GMC Terrain, in which they found the cocaine providing the grounds for the charges in this case, until they obtained a search warrant.

16

(U.S. Ex. 1 at 4.) Evidence obtained in a warranted search should not be suppressed if law enforcement relied in good faith on the probable cause determination of the issuing judge, even if the issuing judge was mistaken, unless one of the four exceptions to the good faith doctrine applies. The purpose of the exclusionary rule is to deter police misconduct, and where the police have relied on the probable cause determination of a neutral and disinterested judge, there is no police misconduct, and thus, nothing to deter through application of the exclusionary rule. *Herring*, 555 U.S. 142 (2009); *Leon*, 468 U.S. 916 (1984). "Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Imposing an admittedly indirect 'sanction' on the police officer in that instance is nothing less than sophisticated nonsense." *Stone v. Powell*, 428 U.S. 465, 498 (1976) (Burger, J., concurring).

The *Leon* "good-faith" exception applies unless the warrant application included a false statement made to intentionally mislead the issuing judge, the issuing judge wholly abandoned their judicial role, the supporting affidavit so lacked probable cause that an official could not reasonably believe probable cause existed, or the warrant is otherwise so deficient that no reasonable police officer could presume it to be valid. *United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (citing *United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007)).

None of these scenarios exist here. The Minneapolis police officers who applied for the warrant did not make a false statement in their application, as discussed above. There has been no allegation that the issuing judge acted improperly in any way. Mr. Early was lawfully arrested on suspicion of distributing narcotics, and the car was impounded subject

to Minneapolis Police Department policy. The lawfully obtained surveillance footage of the January 31 shooting and the alleged narcotics transactions on February 1 provided probable cause to support the warrant, so reliance on the warrant by the executing officers was reasonable. The warrant has no facial deficiencies. Therefore, even if the warrant lacked probable cause, the officers who executed it did so in good faith, and its evidentiary fruits should not be suppressed.

## ORDER

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Mr. Early's Motion for a *Franks* Hearing (Dkt. No. 42) is **DENIED.**

## RECOMMENDATION

Further, IT **IS HEREBY RECOMMENDED** that:

1. Mr. Early's Motion to Suppress Evidence Obtained as a Result of a Search and Seizure (Dkt. No. 25) be **DENIED**;

2. Mr. Early's Motion to Suppress Statements (Dkt. No. 26) be **DENIED**; and

3. Mr. Early's Motion to Suppress Evidence Obtained as a Result of a Search Warrant (Dkt. No. 43) be **DENIED**.


Date: May 14, 2025                                    *s/ John F. Docherty*
                                                      JOHN F. DOCHERTY
                                                      United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).